1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TAMECUS REED,                              No.  2:14-cv-00463-JAM-GGH

12                   Petitioner,

13         v.                                   ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14   STU SHERMAN,

15                   Respondent.

16

17   I.      INTRODUCTION

18           Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.  Pending before the court are: 1) respondent's November 4, 2014

20   motion to dismiss on the grounds that the petition was filed beyond the statute of limitations and

21   contains unexhausted claims (ECF No. 23); and 2) petitioner's December 5, 2014 motion for

22   leave to conduct discovery (ECF No. 26).  Both parties have filed oppositions to these motions.

23   Petitioner opposes the motion to dismiss on the ground that he is entitled to equitable tolling

24   based on his mental impairment of depression.  Petitioner also bases his motion for discovery on

25   his alleged mental impairment and allegations of newly-discovered evidence.  On reply,

26   respondent contends petitioner has failed to offer any evidence that he suffered from depression

27   during the relevant period and thus is not entitled to equitable tolling.  The court now issues the

28   following order and findings and recommendations that respondent's motion to dismiss be

                                                 1

granted on the ground that the petition is untimely and orders petitioner's motion for leave to conduct discovery denied.[1]

II.    DISCUSSION

    A.    Motion to Dismiss

    The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    A jury convicted petitioner of first degree murder, burglary, forcible oral copulation, six counts of rape, sodomy and two counts of digital penetration. People v. Reed, 2003 WL 1383475, at *1 (March 20, 2003). The jury also found true nine great bodily injury enhancements regarding the sex crimes. Id. Petitioner appealed challenging the nine great bodily injury enhancements and the restitution fine. Id. On March 20, 2003, the California Court of Appeal affirmed the judgment. Id. at *5. Petitioner did not seek further review with the California Supreme Court.

/ / /

---

[1] Because the undersigned finds that the petition is untimely and that petitioner is not entitled to tolling, the undersigned will not address respondent's secondary argument that petitioner's claims are unexhausted.

1    Subsequently, petitioner filed a series of state petitions for habeas corpus.  The first

2    petition, filed on September 19, 2006 with the Sacramento County Superior Court, was denied on

3    April 7, 2008, as untimely with citations to In re Robbins, 18 Cal. 4th 770, 811–12 (1998) and In

4    re Clark, 5 Cal. 4th 750, 775–75 (1993).  Resp't's Lod. Docs. 3, 4.  The second petition, filed on

5    February 17, 2011 with the Sacramento County Superior Court, was denied on May 3, 2011, as

6    untimely and successive with citations to In re Clark, 5 Cal. 4th 750, 797–98 (1993) and In re

7    Robbins, 18 Cal. 4th 770, 811–12 (1998).  Resp't's Lod. Docs. 5, 6.  The third state petition, filed

8    on January 25, 2012 with the Sacramento County Superior Court, was denied on March 7, 2012,

9    as successive with citations to In re Robbins, 18 Cal. 4th 770, 811–12 (1998) and In re Clark, 5

10   Cal. 4th 750, 774–75 (1993).  Resp't's Lod. Docs. 7, 8.  Petitioner filed his federal petition on

11   February 9, 2014.  ECF No. 1.

12   Notwithstanding these state habeas petitions, petitioner's conviction became final for

13   AEDPA purposes on April 29, 2003.[2]  Petitioner had one year, that is, until April 29, 2004, to file

14   a timely federal petition, absent applicable tolling.  As such, the instant action, filed February 9,

15   2014,[3] is not timely unless petitioner is entitled to equitable tolling.[4]

16           1.   Equitable Tolling

17   Petitioner contends he is entitled to equitable tolling because "he was incapable of filing a

18   meritorious federal habeas petition within the limitation[s] period of April 29, 2004, due to . . .

---

[2]  Petitioner appears to contend there is newly-discovered evidence that would justify a later trigger date.  That newly-discovered evidence, as more fully discussed in section II.A.2, includes an allegedly altered interrogation videotape, fabricated fingerprint evidence, and false DNA evidence.  However, petitioner admits that he knew of this evidence either prior to or during trial.  ECF No. 25, at 12, 21.  Accordingly, such evidence cannot constitute "newly-discovered evidence" for AEDPA statute of limitations purposes.  Moreover, petitioner must demonstrate a state created impediment to *filing* a habeas petition, not just various, conclusory allegations of claims.

[3]  The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court.  Houston v. Lack, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

[4]  Of course, statutory tolling plays no part in this motion as the AEDPA statute of limitations had expired to the filing of the first state habeas petition.

depression." ECF No. 25 at 4.  To be entitled to equitable tolling, petitioner must show that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstances stood in his way and prevented timely filing.  See Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562 (2010); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence."  See Holland, 560 U.S. at 653, 130 S.Ct. at 2565; Bills v. Clark, 628 F.3d 1092, 1096 (9th Cir. 2010).

A Ninth Circuit panel has set forth that "eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:"

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, see Holland, —— U.S.——at ——, 130 S.Ct. [2549]at 2562, 177 L.Ed.2d 130 [ (2010) ], by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. [N.2]
>
>> [N.2] The magistrate judge stated a habeas petitioner must show "he was unable by reason of mental defect to understand his need to timely file a habeas petition *and* unable to take steps to effectuate that filing." (emphasis added). Under our formulation, a petitioner would be entitled to equitable tolling if he could show either of those conditions were met: *either* he did not understand his need to timely file *or* his mental impairment made him unable to take steps to effectuate that filing. In either case, if the mental impairment is so severe that it causes the untimely filing, the petitioner is entitled to equitable tolling.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills, 628 F.3d at 1099–1100 (emphasis in original).  The court went on to state:

> In practice, then, to evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental

4

impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Id. at 1100–01.

The Ninth Circuit has recently decided two cases addressing the severity prong of the test. In Yeh v. Martel, 751 F.3d 1075 (9th Cir. 2014), the Ninth Circuit concluded that the petitioner's mental impairment claim failed because "he was able to make requests for assistance from an appeals coordinator and an interpreter at his administrative hearings, and also to request assistance from a public defender after his conviction. Moreover, he was able to file a state habeas petition in three different California venues." Id. at 1078. In Forbess v. Franke, 749 F.3d 837 (2014), the Ninth Circuit concluded that the petitioner was entitled to equitable tolling because he "suffered from delusions so severe that he was unable to understand the need to timely file his petition, and the unique nature of those delusions made it impossible for him to timely file." Id. at 838. The petitioner's mental illness was described as follows:

Petitioner believed he was working undercover for the FBI, and his trial was a "sham" orchestrated to lure his ex-wife out of hiding and arrest her for being part of an extensive drug distribution operation. Petitioner's claim that his delusions persisted *from the time of his trial to the expiration of the limitations period* is supported by the psychological evaluations of Dr. Fickle, Dr. McDonald, and Dr. Melnick, and by the mental health records. During the relevant time period, Petitioner genuinely believed that FBI would release him once they arrested his ex-wife. As such, he was incapable of rationally understanding the necessity of filing a timely habeas petition.

Id. at 840.

In the instant case, petitioner contends the following events caused his depression:

[T]he totality of the circumstances of Petitioner being unlawfully arrested in January 1999, falsely accused, constant harassment by the county deputies and inmates housed within the county jail, including physical and mental abuses, the use of false evidence at trial in which the death penalty was sought by the prosecutor, the complete abandonment by defense counsel before and at trial, and ultimately Petitioner's wrongful conviction in December 2001.

ECF No. 25, at 2–6. Petitioner also explained that, on several instances, he was attacked by other inmates due to the nature of his offenses. Id. at 6–7. He asserts, without documentation, that, in

1   May 2002, he sought help for his depression but was told that he could not be depressed because

2   his brain was "too high functioning." Id. at 7–8.  He claims that his depressive mood affected

3   him from May 2002 until May 2012.  Id. at 8.  He also states that "he is unable to present

4   evidence of his mental illness at this time other than his own allegations." Id. at 10.

5         The undersigned concludes that petitioner is not entitled to equitable tolling by reason of

6   his depression.  First, petitioner's mental illness does not rise to the level of the delusions

7   experienced by the petitioner in Forbess.  Petitioner did not submit any documentary evidence or

8   medical evaluations suggesting that he suffered from depression.  Indeed, respondent submitted

9   copies of petitioner's mental health history for the relevant time period.  See ECF No. 31-1.

10  Those records did not reveal a mental illness akin to that in Forbess.  In January 2002, petitioner

11  was cleared to be placed in general population.  ECF No. 31-1 at 10.  Petitioner refused a mental

12  health screening in October 2005.  Id. at 9.  In November 2009, April 2011, September 2011,

13  June 2012, April 2013, and September 2013, petitioner received mental health screens prior to

14  being placed in administrative segregation.  Id. at 3–8.  In each instance, a mental health referral

15  was not needed prior to his placement.  See e.g., id. at 3 ("If all answers are 'no,' a mental health

16  referral is not needed before placement in ASU.").

17        Furthermore, like the petitioner in Yeh, during the time period in which he alleged he was

18  suffering from debilitating depression, petitioner filed three state petitions for habeas corpus.

19  Resp't's Lod. Docs. 3, 5, 7; see also Yeh, 751 F.3d at 1078.  Petitioner's ability to file these state

20  petitions severely undermines his contention that his depression prevented him from timely filing

21  his federal habeas corpus petition.  Accordingly, the undersigned finds that petitioner has not

22  made a non-frivolous showing that he had a severe mental impairment during the filing period

23  and thus is not entitled to equitable tolling.  See Bills, 628 F.3d at 1100.

24           2.  Actual Innocence

25        Petitioner appears to contend he is actually innocent of the crimes of which he has been

26  convicted and thus the Court should proceed to the merits of his claims notwithstanding the

27  tardiness of his petition.  "[A] credible claim of actual innocence constitutes an equitable

28  exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass

1   through the Schlup gateway and have his otherwise time-barred claims heard on the merits." Lee

2   v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (en banc).  In order to proceed on this ground,

3   however, petitioner must demonstrate "that it is more likely than not that no reasonable juror

4   would have found him guilty beyond a reasonable doubt."  Id. at 937.  "Actual innocence means

5   factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623,

6   118 S. Ct. 1604, 140 L.Ed.2d 828 (1998).  The actual innocence exception applies to a "narrow

7   class of cases implicating a fundamental miscarriage of justice."  Lampert, 653 F.3d at 938.

8       The habeas petitioner must "support his allegations of constitutional error with new

9   reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

10  accounts, or critical physical evidence—that was not presented at trial."  Schlup, 513 U.S. at 324.

11  Such evidence need not be newly discovered, but only newly presented.  Griffin v. Johnson, 350

12  F.3d 956, 961-963 (9th Cir. 2003).  The habeas court then "consider[s] all the evidence, old and

13  new, incriminating and exculpatory," admissible at trial or not.  House v. Bell, 547 U.S. 518, 538,

14  126 S. Ct. 2064 (2006) (internal quotation marks omitted); see also Carriger v. Stewart, 132 F.3d

15  463, 477–78 (9th Cir. 1997).  In considering this evidence, the court "must assess the probative

16  force of the newly presented evidence in connection with the evidence of guilt adduced at trial,"

17  and "may consider how the timing of the submission and the likely credibility of the affiants

18  bears on the probable reliability of that evidence."  Schlup, 513 U.S. at 332.  Then the habeas

19  court makes a "'probabilistic determination about what reasonable, properly instructed jurors

20  would do.'"  House, 547 U.S. at 538, quoting Schlup, 513 U.S. at 329.

21      Petitioner first asserts that the police altered his interrogation video.  He claims that

22  although the video shows to the contrary, he was not read his Miranda rights and subsequently

23  gave involuntary statements during that interrogation.  ECF No. 25 at 12.  Petitioner also states

24  that sometime in the middle of 2000, he obtained an expert to review the videotape and who

25  stated over a jailhouse telephone conversation that there was a gap where the Miranda advisement

26  had been inserted.  Id. at 11.  Unfortunately, according to petitioner, the expert suddenly died

27  before his findings could be presented to the court.  Id.  After trial counsel was appointed,

28  petitioner requested trial counsel to retain another expert to analyze the tape.  Id. at 12.  Petitioner

7

1    states that trial counsel stated for that record that petitioner had made that request.  Id.  However,

2    petitioner does not support his allegations with reliable evidence, as required by Schlup nor does

3    he state exactly how that altered videotape would undermine his conviction on actual innocence

4    grounds.  513 U.S. at 324.

5          Petitioner also asserts that fabricated fingerprint evidence was used at trial to convict him.

6    Petitioner lists a host of alleged chain of custody issues with regard to the fingerprint samples

7    taken from the crime scene.  ECF No. 25, at 15–18.  He also claims that he requested discovery

8    related to the fabricated fingerprint but the district attorney's office response was inadequate.  Id.

9    The district attorney represented that none of the items that petitioner requested existed.  Id. at 19.

10   Again, petitioner only offers allegations without reliable evidence.  He is not entitled to proceed

11   through the Schlup gateway based on his fabricated fingerprint argument.

12         Petitioner additionally contends his conviction was wrongfully obtained because the DNA

13   evidence used against him was substituted, altered, changed, and/or tampered with by the

14   Sacramento County Sheriff's Department.  ECF No. 25, at  21.  Once again, petitioner failed to

15   provide any evidence substantiating this claim.  As such, the undersigned does not find that it is

16   more likely than not that no reasonable juror would have found him guilty beyond a reasonable

17   doubt.  It is clear that this case does not fall into the narrow class of cases implicating a

18   fundamental miscarriage of justice.  Therefore, the actual innocence exception of the AEDPA

19   one-year statute of limitations does not apply here.

20         B.      Motion for Discovery

21         Petitioner filed a motion requesting leave to conduct discovery with regard to his mental

22   impairment and allegations of newly-discovered evidence.  ECF No. 26.  Because the

23   undersigned recommends petitioner's claims be denied as untimely, petitioner's motion for

24   discovery is denied.

25   CONCLUSION

26         Where, as here, the petition was dismissed on procedural grounds, a certificate of

27   appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it

28   debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of

8

1    reason would find it debatable whether the petition states a valid claim of the denial of a

2    constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir.2000) (quoting Slack v.

3    McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).  The court finds that a

4    certificate of appealability should not issue in this case for the reasons stated herein.

5         Accordingly, IT IS HEREBY ORDERED that petitioner's motion for leave to conduct

6    discovery (ECF No. 26) is denied.

7         IT IS RECOMMENDED that:

8        1.   Respondent's motion to dismiss the petition as untimely, filed on November 4, 2014

9             (ECF No. 23), be granted;

10       2.   This action be dismissed with prejudice; and

11       3.   The District Court decline to issue a certificate of appealability.

12         These findings and recommendations are submitted to the United States District Judge

13    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14    after being served with these findings and recommendations, petitioner may file written

15    objections with the court.  The document should be captioned "Objections to Magistrate Judge's

16    Findings and Recommendations."   Any response to the objections shall be filed and served

17    within fourteen days after service of the objections.  Petitioner is advised that failure to file

18    objections within the specified time may waive the right to appeal the District Court's order.

19    Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20    DATED: March 11, 2015

21                           /s/ Gregory G. Hollows

22                   UNITED STATES MAGISTRATE JUDGE

23

24

25

26    GGH:016/Reed0463.mtd.hc

27

28